[Civ. No. 6482. First Appellate District, Division One.—December 3, 1929.]

ALADDIN COMPANY OF AMERICA (a Corporation), Respondent, v. J. G. GREGORY, Appellant.

L. Seidenberg, George M. Naus and Joseph M. Trusty for Appellant.

Keyes & Erskine for Respondent.

THE COURT.—An action to recover the sum of $1625 alleged to have been received by the defendant for the use and benefit of the plaintiff. The plaintiff claimed that the above amount was deposited with the defendant as security for the payment of the rent of certain real property in San Francisco; that a written lease thereof containing the terms agreed upon by the parties and pursuant to which the deposit was made, was signed by them, but that the defendant refused possession unless the plaintiff would agree to the execution of another lease in a different form; that the latter declined to do so and demanded the return of the deposit. The defendant maintained that the original lease was executed by both parties and that the plaintiff, without cause, abandoned the lease and the leased premises. A jury returned a verdict for the plaintiff, and from the judgment entered thereon the defendant, whose motion for a new trial was denied, has appealed. As grounds therefor it is contended that the verdict is unsupported, and that the court erred in excluding certain evidence offered by the defendant, and in its instructions to the jury.

The evidence shows that George F. Shade of the firm of Allen & Co., who appear to have been real estate agents acting for the plaintiff, entered into negotiations with Frank J. Golden, the agent of the defendant, for a lease of the premises. These negotiations resulted in a lease being drawn by Shade which was signed by both parties. The term of the lease was five years, commencing on December 1, 1925, at a monthly rental of $325, payable in advance, and as security for performance by the plaintiff the latter agreed to deposit with the defendant the sum of $1625. According to Shade the instrument was not delivered, but was held by Golden pending the payment of the deposit. Golden was absent from San Francisco for about two weeks and upon his return a check for the amount of the deposit was tendered to him by an agent for the plaintiff. Golden then stated that he was not satisfied with the lease which had been signed, and proposed another in the form prepared by him, further stating that the check which was left with him would be held until the completion of the transaction. The new lease was submitted to the plaintiff corporation, which refused to execute the same, and the check was thereafter cashed by Golden and the amount paid to the defendant. Golden testified that when the plaintiff refused to accept the new lease prepared by him he stated that they would operate under the lease already signed. It was testified by Shade, however, that the plaintiff was willing to proceed under the first lease, and so notified Golden, who refused to give possession of the property unless the new lease should be executed by the plaintiff. Other witnesses testified that for the purpose of making measurements for floor plans therein the key to the premises was obtained by plaintiff's employees at the time the deposit was made, and that subsequently the key was returned to Golden.

As to whether the lease was delivered to the plaintiff, the evidence is conflicting. The agent Golden testified in substance that previous to his absence from San Francisco he instructed his brother, A. E. Golden, to deliver the same to the plaintiff; that he was advised that this had been done, but the witness was unable to recollect whether the instrument was still in his office upon his return. He further testified, however, that he saw a signed original thereof in the office of the president of the plaintiff, subse-

quent to the date when the check was deposited. According to A. E. Golden the lease was given to him with instructions to leave it with the stenographer of Frank J. Golden, but that it was not to be delivered or possession of the premises given until the security had been deposited, and that he notified plaintiff's agents to that effect. The witness, however, failed to testify that the instrument or the possession of the premises was delivered to the plaintiff. The agent of the plaintiff referred to by Shade testified that he was sent by the plaintiff to deliver the check to Golden and procure the lease which the parties had signed, and that he was accompanied by Shade; that Golden stated that the lease was not ready, saying with respect to the check, "so long as you have got the check here, if you will leave the check with me, I will not cash this check until these leases are signed and the business is concluded." Other witnesses for the plaintiff testified that the key to the premises was procured by them on several occasions for the purpose of inspecting and drawing floor plans, but that each time it was returned to Golden.

While the above would support different conclusions, the inferences to be drawn therefrom, as well as the weight to be given the testimony of the witnesses, were questions for the jury, and the evidence was sufficient to support findings that neither the lease nor the possession of the premises was delivered to the plaintiff, as well as the conclusion that due to defendant's refusal to proceed with the transaction the lease never became effective.

The following instruction was given at plaintiff's request: "You are instructed that a lease takes effect upon its delivery to the party in whose favor it is made, or to his agent. The term delivery is frequently used in a popular sense as designating the mere transfer of physical custody or possession, but it also has a legal sense, and it is in this latter sense that it is used in these instructions. In the law a lease is delivered when it is signed by both the lessor and lessee with the intent to give it immediate effect and to place it beyond the power of the lessor to control or revoke. It is the delivery which gives effect to the lease, and without delivery the lease is invalid, and not effective for any purpose even though it be signed."

The defendant claims that by this instruction the jury was told in effect that in order to make the lease effective its manual delivery was essential. We do not so understand the instruction. The court was careful to distinguish between a mere physical transfer as constituting a delivery, and the legal significance of the term by stating that "in the law a lease is delivered when it is signed by both the lessor and the lessee with the intent to give it immediate effect and to place it beyond the power of the lessor to control or revoke." The last paragraph in the instruction clearly refers to the paragraph quoted, and the instruction when read and considered as a whole cannot reasonably be said to have been misleading. Moreover, if the defendant believed the instruction to be ambiguous, he should have asked for a more specific instruction as to the acts necessary to give effect to the lease.

The evidence shows that the plaintiff intended to conduct its business on the premises described in the lease, and in support of the claim that the plaintiff abandoned the lease and premises the defendant sought to show by the cross-examination of witnesses called by the plaintiff that no other location was subsequently obtained, and upon objection to the questions being sustained offered to prove the fact. The rulings are assigned as error. While evidence tending to prove an issue is admissible although alone it might not justify a verdict (Code Civ. Proc., sec. 1870, subd. 15; *Moody* v. *Peirano,* 4 Cal. App. 411 [88 Pac. 380]), and the facts sought to be shown by defendant had some relevancy to the question whether there was an abandonment by the plaintiff, nevertheless the probative value of the evidence offered was insufficient to justify a reversal of the judgment on the sole ground of its erroneous exclusion.

Appellant further insists that the court erred by denying her motion for a new trial.

The motion was based on newly discovered evidence, and was supported by affidavits, in which the affiants relate conversations with the president of plaintiff corporation tending to prove that the corporation had entered into a lease of the premises, but was unable to finance its business in San Francisco. Much of this evidence was cumulative, and counter-affidavits were filed by plaintiff supporting con-

clusions contrary to those sought to be established by appellant. We are of the opinion that the probative weight of the new evidence was insufficient to render a different result probable. The question from its nature was one addressed to the sound discretion of the trial court (*People* v. *Selby S. & L. Co.,* 163 Cal. 84 [Ann. Cas. 1913E, 1267, 124 Pac. 692, 1135], and *Estate of Loucks,* 160 Cal. 551 [Ann. Cas. 1913A, 868, 117 Pac. 673]), and we cannot say that the denial of the motion was an abuse of discretion.

After an examination of the entire record, including the evidence, we are satisfied that the verdict is fully sustained and that no error appears which would reasonably support the conclusion that the result was a miscarriage of justice.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 2, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 30, 1930.

All the Justices present concurred.